FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**Southern Division**

97 DEC 23   AM 10: 16

U.S. DISTRICT COURT
N.D. OF ALABAMA

EDDIE LEE OSBERRY, et al.,       )
      Plaintiffs;            )
                        )       No. CV 92-P-2942-W
-vs.-                     )
                        )
CITY OF BRENT, et al.,        )
      Defendants.        )

ENTERED

DEC 23 1997

## OPINION

On September 24, 1997, a hearing was held on the Plaintiffs' Renewed Motion For Order

Certifying Class Action.  The Plaintiffs seek certification of a class of all blacks who were

detained, searched, or arrested by defendants conducting roadblocks on State Highway 5 in Bibb

County, Alabama during the September 1991 and September 1992 Footwash Festivals.  For the

reasons set forth below, the court finds that this case should not be maintained as a class action.

Accordingly, the Plaintiff's motion is due to be denied.


## BACKGROUND

In September of 1991 and 1992 roadside checkpoints were set up by law enforcement

authorities in Bibb County, near the City of Brent, in connection with the annual "Footwash

Festival".[1]  In December 1992 this law suit was initiated by four individuals, Eddie Lee Osberry,

Gregory Wayne Chaviest, Lillian Yerby and Albert Yerby, who alleged that the manner in which

the 1992 checkpoint was conducted violated their rights guaranteed by the Fourth, Fifth and

---

1.    The Footwash Festival is a large outdoor party held every September in Marengo County near
Uniontown, Alabama.  It is attended almost exclusively by black people.



Fourteenth Amendments. Plaintiffs Osberry and Chaviest were arrested at the 1992 checkpoint. They were charged with and paid fines for the offense of possessing alcohol. Plaintiffs Lillian and Albert Yerby were not present at either checkpoint. The Yerbys' van was confiscated at the 1992 checkpoint while it was being used by one of their daughters, who was arrested for possession of marijuana.

On March 10, 1993, the Plaintiffs amended their complaint to add Susan Polk and Leroy Gibson as plaintiffs and to enlarged the putative class to include those persons whose constitutional rights were allegedly violated by the Defendants during the 1991 Footwash Festival checkpoint. Plaintiffs Polk and Gibson were arrested at the 1991 checkpoint. They were charged with and paid fines for the offense of possessing alcohol.

The Plaintiffs have identified thirty-seven individuals as arrested at the 1992 checkpoint and about fifty as arrested at the 1991 checkpoint. Attorneys for the plaintiffs assert that they can identify "scores more" prospective class members who suffered similar constitutional violations at the checkpoints, perhaps as many as 400 persons.


ANALYSIS

This case raises a number of issues that make it inappropriate for class certification. The court has considered several ways in which the potential barriers to certification might be remedied through a modification of the definition of the proposed class. However, the court finds that the enormity of these various problems, when viewed as a whole in the context of the entire case, make this case a poor candidate for maintenance as a class action. Three of these issues in particular raise the most significant problems.

This first problem is the difficulty of identifying the members of the proposed class. While the putative class is certainly susceptible to an objective and precise definition, the court concludes that it would be extremely difficult to actually locate and identify the individuals who fit this definition and to whom notice should be given. There are no police records showing what vehicles encountered the checkpoints or which ones were stopped, and no lists of who attended the 1991 and/or 1992 Footwash Festivals. The court foresees a problem of identification, rather than definition, that would create tremendous administrative and practical difficulties in determining who would be entitled to notice, who would be entitled to any relief that might be granted, and who should be bound by any adverse judgments.

The second problem involves meeting the commonality/predominance requirement of Rule 23(b)(3) and the typicality requirement of Rule 23(a).[2] The Plaintiff's complaints allege a wide range of injuries including the violation of their Constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments. It appears that the putative class shares common claims that their initial stop or seizure may have been in violation of their Fourth Amendment right to be free from seizures that are unreasonable in initiation, as well as their Fourteenth Amendment right to the equal protection of the law. Indeed, by the very terms of the proposed definition, all putative class members suffered the initial stops whose constitutionality will be at issue in this case. Likewise, all putative class members would share the common question of whether the design and execution of the checkpoints constituted an equal protection violation.

---

2. The court finds that the types of class action described in Rules 23(b)(1)(A), (b)(1)(B) and (b)(2) are clearly not implicated by the facts of this case. The only possible type of action that could be maintained would be a 23(b)(3) class. Accordingly, the court must be satisfied that the predominance and superiority requirements of 23(b)(3) are met before granting certification.

In contrast, the other alleged constitutional violations raise issues that are specific to the particular conduct of each individual encounter with the police at the checkpoints. For instance, among the putative class members, there is a wide range in the duration of the seizures and the scope of the individual searches. While all putative class members were initially stopped, many but not all suffered further detention by the side of the road, some but not all were searched, and some but not all were then arrested and convicted. These differences imply that highly individualized fact-specific inquiries into the conduct of different defendants will be required to determine both liability and damages for Fourth Amendment violations regarding conduct beyond the initial stops.

Likewise, some but not all putative class members may have Fifth Amendment and mental anguish claims. Even among this subgroup, the proof of such claims would require an individualized inquiry into the circumstances of each encounter and each allegedly coerced confession.

While the existence here of at least some common questions of law or fact may be sufficient to satisfy the basic commonality requirement of Rule 23(a)(2), these common issues certainly do not reach the level of predominance required of a class certified pursuant to Rule 23(b)(3). The differences described above between the claims of the named plaintiffs and the claims of many of the putative class members also prevent the plaintiffs from satisfying the typicality requirement of Rule 23(a)(3).

The most significant certification problems are those raised by the rule of *Heck v. Humphrey,* which prohibits plaintiffs from recovering damages under § 1983 for allegedly unconstitutional convictions, or any other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid, unless that conviction has been invalidated in some way. 512 U.S. 477, 486-87 (1994). The four named plaintiffs who were actually present at the checkpoints were all convicted. These convictions have not been overturned or invalidated in any way. If this court were to declare that the seizures that were the proximate cause of the Plaintiffs' arrest and conviction violated any of the Plaintiffs' constitutional rights, that would necessarily imply the invalidity of those convictions. In other words, the Plaintiffs' present suit bears precisely the relationship to their prior convictions that was contemplated in *Heck*. Thus, they are barred by *Heck* from pursuing a § 1983 damages action. The applicability of the *Heck* rule raises two specific class certification problems.

The first such problem is that none of the named plaintiffs have standing to represent the putative class. To have standing, the class representative must possess the same interest in the litigation and have suffered the same injury as the proposed class members. *See, Schlesinger v. Reservist Committee to Stop the War*, 418 U.S. 208 (1974). The four convicted plaintiffs do not possess the same interest in the litigation because they will not be able to recover the monetary damages that would be available to those class members who were not convicted. *Heck* at 486-87. The two plaintiffs who were not convicted, Lillian and Albert Yerby, have not suffered the same injury as the putative class members because they were not present at the checkpoint. Thus, none of the Plaintiffs have standing to sue on behalf of the class they purport to represent.

The second implication of the *Heck* rule is that the Plaintiffs would neither be adequate representatives of the rest of the class as required by Rule 23(a)(4), nor typical of the class as required by Rule 23(a)(3). While the putative class members who were not arrested could sue for damages under § 1983, the named plaintiffs would not be able to pursue such relief and would not

5

be good representatives of those interests.  This divergence of available remedies also diminishes the typicality of claims required by 23(a)(3).

CONCLUSION

For all of the reasons discussed above, the court is unable to certify this case as a class action.  The court has taken into careful consideration the important interests that would be served by litigating this matter as a class and has even spent considerable time trying to craft solutions to the procedural and substantive classification problems discussed above.  However, the problems viewed as a whole require this court to conclude that maintaining this case as a class action would be both infeasible and inappropriate

Dated: December 22, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
  Gayle H. Gear
  Roger L. Bates
  Daryl L. Masters
  Timothy P. Donahue